UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| COREY McNAMEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:14 CV 260 |
| | ) |
| FAMILY FOCUS, INC., | ) |
| | ) |
| Defendant. | ) |

### OPINION and ORDER

Corey McNamee ("plaintiff"), a *pro se* plaintiff, brings suit against his former employer, Family Focus, Inc. ("Family Focus" or "defendant"). Plaintiff alleges defendant paid him less than female caseworkers in violation of the Equal Pay Act (the "EPA"), 29 U.S.C. § 206 *et seq*. (DE # 1.) Defendant has moved for summary judgment. (DE # 62.) For the reasons stated below, the motion will be granted.

### I. LEGAL STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists,

the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Plaintiff did not file a response to the motion for summary judgment, despite being given proper notice of the motion. (*See* DE # 61.) Pursuant to Northern District of Indiana Local Rule 7-1(d)(4), a party's failure to file a response within the time prescribed may subject the motion to summary ruling. Nevertheless, "[s]trict enforcement of [local rules] does not mean that a party's failure to submit a timely filing automatically results in summary judgment for the opposing party." *Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992). Rather, that failure "causes all factual assertions alleged by the opposing party to be deemed admitted." *Id.* Accordingly, defendant's "statement of material facts" (DE # 63 at 2–14) is deemed admitted and undisputed. The court still must "make the further finding that given the

2

undisputed facts, summary judgment is proper as a matter of law." *Wienco, Inc.*, 965 F.2d at 568.

## II. BACKGROUND

Plaintiff began working for Family Focus on September 1, 2008, as a caseworker, and held that position until February 14, 2014, when he was terminated. (DE # 62-2 ¶ 7.) A caseworker's starting wage was calculated using a base hourly wage rate (which could be changed by Family Focus each year) with the addition of one percent per year of direct experience the individual possessed at the time of the hire. (*Id.* ¶¶ 13–14.) Plaintiff's starting wage was $13.92 per hour. (*Id.* ¶ 8.) That number consisted of Family Focus's caseworker base rate from 2008 ($13.26) plus an additional 5% (or $.66) which was awarded due to plaintiff's five years of prior experience. (*Id.*)

Each caseworker's hourly pay was then adjusted over time based on a series of yearly wage increases. Family Focus awarded performance-based wage increases in 2009, 2011, and 2012. (*Id.* ¶ 16.) These increases correlated to each individual employee's yearly performance evaluation score, which ranged on a scale of one to five, with five being the highest. (*Id.* ¶¶ 15–17.) Specifically, Family Focus increased hourly wage rates based on the following scale: in 2009, score of "three" (2% increase), score of "four" (2.5% increase), score of "five" (3% increase); in 2011, score of "three" (2% increase), score of "four" (3% increase), score of "five" (3% increase); in 2012, score of "three" (1% increase), score of "four" (2% increase), score of "five" (3% increase). (*Id.* ¶ 19–23.) No increases were given for scores of one or two. (*Id.*) Family Focus asserts it applied this

policy to all caseworkers, regardless of gender. (*Id*.) There were no wage increases in 2010, and in 2013 all employees received a 3% wage increase. (*Id* ¶ 16.)

In 2009, plaintiff received a score of three and a 2% increase, in 2011 he received a score of four and a 3% increase, in 2012 he received a score of three and a 1% increase, and in 2013 he received the across-the-board 3% increase. (*Id*. ¶ 8.) Thus, at the time of his termination, plaintiff earned $15.22 per hour. (*Id*.)

At various times, multiple female caseworkers had a higher per-hour-wage than plaintiff. (*See id*. at 17–18.) This included Kim, Kara, and Demteress, who, like plaintiff, started as caseworkers in 2008 and received higher wages than plaintiff for the entire span of his employment at Family Focus.[1]

However, not all female caseworkers were paid more than plaintiff. For instance, in February 2014, plaintiff was paid more than six female caseworkers: Nicole C. ($13.82), Crystal ($13.79), Sonya ($14.84), Renee ($15.19), Yarikza ($15.16), and Lisa ($15.16). (*Id*. ¶ 40.) Additionally, plaintiff stated in his deposition that male caseworkers were also paid more than him. (DE # 62-1 at 18 ("[A]ll caseworkers were getting paid more than me, males and females. It wasn't just females.").)

Based on those facts, plaintiff filed suit in this court on July 24, 2014, alleging violations of the EPA and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*

---

[1] The last names of the women have been redacted from the motion for summary judgment, and are not included in this order either. However, the women's wage information including their last names was filed with the court under seal. (*See* DE # 39.)

(the "ADA"). (DE # 1.) His *pro se* complaint also hinted at discrimination on the basis of race, which if true, would violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. (*See id.*) On September 24, 2014, defendant moved to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE # 9.) The court granted the motion in part and dismissed plaintiff's ADA and Title VII claims, leaving only the EPA claim in tact. (DE # 17.)

On August 11, 2016, defendant filed a second motion to dismiss (DE # 50) pursuant to Federal Rules of Civil Procedure 37(d) and 41(b) for plaintiff's failure to prosecute the action and failure to comply with the Magistrate Judge's order dated October 5, 2015 (DE # 26). Specifically, defendant argued that plaintiff had failed to provide responses to discovery requests and had failed to appear for his scheduled deposition. (DE # 50 at 3.) The court denied the motion to dismiss and granted plaintiff a final extension to respond to the outstanding discovery requests. (DE # 54.) Additionally, the court granted defendant an award of attorney fees and costs related to the discovery issue, with the exact amount to be determined at a later date. (*Id.*)

On February 10, 2017, defendant filed a motion for summary judgment as to the only remaining claim. (DE # 62.) Plaintiff did not respond to the motion in any manner. The motion is now ripe for ruling.

5

### III. DISCUSSION

    *A.    Motion for Summary Judgment*

        *i.    The Prima Facie Case*

In order for this Equal Pay Act claim to survive summary judgment, plaintiff must first establish a *prima facie* case of wage discrimination. *See Bartlett v. NIBCO Inc.*, No. 3:08-CV-597, 2010 WL 1779887, at *7 (N.D. Ind. Apr. 28, 2010). To establish a *prima facie* case of wage discrimination, plaintiff must "show that: (1) higher wages were paid to a [fe]male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Cullen v. Ind. Univ. Bd. Of Trustees*, 338 F.3d 693, 698 (7th Cir. 2003).

Evidence in the record demonstrates that certain female caseworkers were paid more per hour than plaintiff. (*See* DE # 62-2 at 17.) Thus, at a minimum, plaintiff has met the first prong of the *prima facie* case.

However, defendant has not argued that plaintiff fails to establish a *prima facie* case. (*See* DE # 63.) Instead, defendant argues that even assuming plaintiff has established a *prima facie* case, summary judgment should still be granted against McNamee because any wage disparity between plaintiff and female caseworkers is based on factors other than sex. (DE # 63 at 14.) Accordingly, the court will bypass the remainder of the analysis of the *prima facie* case and will instead determine whether defendant has established an adequate affirmative defense to the EPA claim.

6

> ii. *Affirmative Defense*

Once a plaintiff establishes a *prima facie* case, the burden of persuasion shifts to the employer to prove one of four statutory affirmative defenses. *Cullen*, 338 F.3d at 702. The employer has the opportunity to show that "the pay disparity [was] due to: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." *Fallon v. Illinois*, 882 F.2d 1206, 1211 (7th Cir. 1989) (citing 29 U.S.C. § 206(d)(1)). If defendant meets its burden, "the plaintiff must then prove the proffered reason is a pretext for discrimination." *Id*. at 1213.

Defendant asserts that both the second affirmative defense (a merit system) and the fourth affirmative defense (i.e., a differential based on any factor other than sex) which is "a broad catch-all exception [that] embraces an almost limitless number of factors, so long as they do not involve sex." *Dey*, 28 F.3d at 1462 (7th Cir. 1994). In assessing the fourth affirmative defense, "it is not [the court's] province to second-guess the employer's business judgment." *Dey*, 28 F.3d at 1462. In other words, "[t]he justification need not be a 'good reason,' but merely a gender-neutral one." *Warren v. Solo Cup Co.*, 516 F.3d 627, 630 (7th Cir. 2008).

Specifically, Family Focus argues it determined caseworkers' wages based on two gender-neutral company policies: (1) application of an annual wage rate for new hires, adjusted for the new caseworker's years of previous experience, training, and related qualifications; and (2) percentage wage increases based on performance

evaluation scores in some years and on across-the-board rates in other years. (*See* DE # 63 at 8, 17–18.)

Family Focus has identified ten female caseworkers who earned a higher hourly wage than plaintiff. (*See* DE # 63.) Defendant has provided wage information for each of these women, for the period that plaintiff was employed by Family Focus, including details regarding the calculation of each woman's starting wage rate and the calculation of her yearly wage increases. (DE # 62-2 ¶¶ 27–52.) The evidence demonstrates that the wage rates were calculated pursuant to Family Focus's two company policies without consideration of gender.

Family Focus's first company policy took prior experience into consideration. The Seventh Circuit has found this to be an appropriate "factor other than sex." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 697 (7th Cir. 2006) ("Under the EPA, differences in education and experience may be considered factors other than sex.").

The second company policy allowed wages to be altered based on employee performance evaluation scores.[2] Courts agree that employee merit or performance is a legitimate basis for a pay disparity where—as is the case here—the merit pay program is administered systematically and uniformly. *See Brennan v. Victoria Bank & Trust Co.*, F.2d 896, 901 (5th Cir. 1974) (upholding defendant's merit system program as "a systemic, formal system guided by objective, written standards"); *Corning Glass Works v.*

---

[2] These scores measured on-job performance based on the following factors: key responsibilities, availability, communication and teamwork, customer service, quality and productivity, and organizational perspective/professionalism. (DE # 62-2 ¶ 18.)

*Brennan*, 417 U.S. 188, 201 (1974) (holding that wage differentials based upon bona fide job evaluation are outside the purview of the EPA); *United States v. City of Chicago*, 73 C 661, 1979 WL 45, at *2 (N.D. Ill. Oct. 17, 1979) ("The [EPA] use of 'merit system' has been construed to mean a system of increases in compensation based on performance of duties."). The evidence in the record demonstrates that Family Focus established a regulated system for evaluating employees' performance. (*See* DE # 62-2 ¶¶ 17–18.) Defendant then used those scores to implement wage adjustments in an objective, uniform manner; individuals who received the same performance scores received the same wage adjustments, regardless of gender. (*See id.* ¶ 52.)

Of course, performance scores would not be an appropriate factor to consider when determining wage adjustments if the scores were influenced by each caseworker's respective gender. But, none of the evidence presented to the court indicates that plaintiff's performance scores were impacted by his gender in any way. Nor has any evidence been presented that plaintiff's female coworkers' scores received any positive adjustment due to their gender.

Accordingly, the undisputed facts before the court demonstrate that Family Focus used appropriate factors other than sex, applied uniformly, to determine the wages of its caseworkers. Therefore, Family Focus has met its burden of persuasion by proving a statutory affirmative defense to the EPA claim.

The burden now returns to plaintiff to introduce evidence that Family Focus's facially gender-neutral wage policy was a pretext for discrimination on the basis of

9

gender. *See Cullen*, 338 F.3d at 704. Plaintiff presents no evidence of this sort. Since there is a legitimate, nondiscriminatory reason for the difference in pay, and since there is no genuine issue of material fact over its validity, summary judgment is appropriate on this claim. *See Rowels v. Ill. Dep't of Employment Sec.*, No. 99 C 6450, 2004 WL 1243870, at *2 (N.D. Ill. June 8. 2004).

        *iii.*      *Hours and Opportunities*

In his deposition, plaintiff presented an alternate theory for recovery under the EPA, based on a lower amount of hours worked, rather than a lower hourly wage rate. (DE # 62-1 at 29.) According to plaintiff's theory, defendant limited his opportunities at work, as compared to other caseworkers, and this effectively limited the number of hours he was able to work, including overtime hours. (*Id*. at 27–29.) Such a limitation in hours, plaintiff argues, resulted in less overall pay compared to other workers. (*See id*.)

However, the court finds that plaintiff cannot support an EPA claim under this theory for two reasons. First, the EPA supports claims only when higher wages are paid to an employee of one gender for *equal* work. *See Cullen*, 338 F.3d at 698. If one employee works substantially more hours than another, the two have not performed equal work.

Second, plaintiff has provided no legal support for the notion that an EPA claim may be based on a denial of opportunities to earn hours at work. Meanwhile, defendant points to two decisions from other district courts in which the denial of opportunities was found not to give rise to an EPA claim. *See True v. New York State Dep't of Corr.*

10

*Servs.*, 613 F. Supp. 27, 31 (W.D.N.Y. 1984) (denial of overtime opportunities to female employees does not constitute a valid EPA claim); *Lancaster v. Holt, Rinehart, & Winston, Inc.*, No. TCA 81-777, 1982 WL 539, at *2 (N.D. Fla. Oct. 20, 1982) ("The meaning of "wages" under the [EPA] is to be taken in its normal usage. . . . It, however, does not encompass employment *conditions* or *opportunities* . . . .").

Therefore, the court finds that summary judgment is appropriate on plaintiff's EPA claim under this second theory, as well.

    B.    *Attorney Fees*

In its order dated November 8, 2016, the court granted defendant "an award of reasonable expenses, including attorney fees, against plaintiff and in favor of defendant for the time and expense incurred as a result of plaintiff's lack of response to the discovery served on him and failure to appear for his deposition, and the costs incurred in bringing [the corresponding] motion [to dismiss]." (DE # 54 at 1–2.) The court gave defendant until December 8, 2016, to file its request for attorney fees and expenses, itemized by task and time expended where appropriate. (*Id.* at 2.) Plaintiff was ordered to file his response, if any, on or before December 22, 2016. (*Id.*)

In response to the court's order, defendant's counsel, John E. Hughes, has submitted a detailed billing statement establishing reasonable attorney fees and costs in the amount of $1,688.71. (DE # 57.) This accounts for the actions taken by Hughes as a result of plaintiff's lack of response to the discovery served on him and plaintiff's failure

to appear pursuant to a notice of deposition. (*See id*.) Plaintiff filed no response to the billing statement.

Accordingly, the court awards Family Focus $1,688.71 in attorney fees and costs. This total amount includes $152.71 for deposition expenses and $1,536.00 in fees (6.4 attorney hours at a rate of $240.00 per hour). (*Id*.)

## IV. CONCLUSION

For the reasons set forth above, the motion for summary judgment (DE # 62) is **GRANTED**, and the request for attorney fees (DE # 57) is **GRANTED**. The Clerk is to **ENTER FINAL JUDGMENT** stating:

> Judgment is entered in favor of defendant Family Focus, Inc., and against plaintiff Corey McNamee, for the amount of $1,688.71. Corey McNamee shall take nothing by way of his complaint.

### SO ORDERED.

Date: July 31, 2017

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT